## RONNIE WRIGHT *v.* DAVID BOURBEAU ET AL.
### (2598)

DUPONT, C.P.J., HULL and SPALLONE, Js.

Argued November 7, 1984—decision released April 16, 1985

*Thomas J. Ullmann,* assistant public defender, with whom, on the brief, was *Douglas Nash,* assistant public defender, for the appellant (plaintiff).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellees (defendants).

SPALLONE, J. The plaintiff, Ronnie Wright, was charged in North Carolina with rape, burglary, armed robbery and two counts of breaking and entering. On January 27, 1983, he was arrested in Connecticut on a warrant charging him with being a fugitive from jus-

tice in North Carolina. He was incarcerated in lieu of bond and served by the defendant David Bourbeau, a Connecticut state trooper, with a rendition warrant, signed by the governor of Connecticut in response to a request for extradition signed by the governor of North Carolina. The plaintiff thereafter petitioned for a writ of habeas corpus challenging the warrant under which he is held for rendition. After a full hearing, the petition was denied and the plaintiff now appeals from that judgment.

The sole issue in this appeal is whether the documents filed in support of the rendition warrant meet the statutory requirements of General Statutes § 54-159.[1] The plaintiff claims that they do not. We disagree.

General Statutes § 54-159 provides that no demand for extradition shall be recognized by the governor unless in writing and accompanied by certain documents.[2] The documents presented with the demand to

---

[1] Although the defendant argues the issue of probable cause in his brief on appeal, probable cause is not an issue in this case. The basis of the petitioner's claim was the alleged deficiency in the documents accompanying the demand for extradition. The trial court's denial of his petition rested upon its conclusion that the requirements of General Statutes § 54-159 had been met.

[2] General Statutes § 54-159, entitled "Requirements for recognition of extradition demand," provides in relevant part: "No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging . . . that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state . . . . "

extradite the plaintiff, and admitted as exhibits at the habeas corpus hearing, included five arrest warrants and one affidavit. Two of the warrants were issued, respectively, on September 1, 1982, and September 21, 1982, and the remaining three were issued on October 1, 1982. The affidavit was dated February 7, 1983. The defendant claims that compliance with the provision of General Statutes § 54-159, which allows a requisition warrant to be supported by "a copy of an affidavit made before a magistrate [in the requesting state], together with a copy of any warrant which was issued thereupon," is only possible if the affidavit either predates or is signed contemporaneously with the warrants. A close examination of the warrants and affidavit in this case, as well as the law, leads us to disagree.

The Uniform Criminal Extradition Act codifies the procedure for the interstate extradition of fugitives, which is a right of the states created by the United States constitution.[3] *Hill* v. *Blake,* 186 Conn. 404, 407, 441 A.2d 841 (1982). The extradition act provides the procedural mechanism for the summary disposition of extradition cases. *Glavin* v. *Warden,* 163 Conn. 394, 395 n.1, 311 A.2d 86 (1972). "The custodial court may not inquire into the merits of the charge or into any claimed procedural infirmities, constitutional or otherwise, lurking in the prosecution. *Michigan* v. *Doran,* [439 U.S. 282, 289, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978)]; *Ross* v. *Hegstrom,* 157 Conn. 403, 409, 254 A.2d 556 (1969); *Rosenberg* v. *Slavin,* 122 Conn. 304, 308, 188 A. 272 (1936). Such matters are to be determined by the court in the charging state. *Ross* v. *Hegstrom,* supra." *Narel* v. *Liburdi,* 185 Conn. 562, 565, 441 A.2d

---

[3] The extradition clause provides that: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." U.S. Const., art. IV § 2, cl. 2.

177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 445 (1982). Once extradition has been granted, a court considering release on habeas corpus examines the following questions: "(a) whether the extradition documents on their face are in order, (b) whether the plaintiff has been charged with a crime in the charging state, (c) whether the plaintiff is the person named in the request for extradition and (d) whether the plaintiff is a fugitive." *Wentworth* v. *Bourbeau,* 188 Conn. 364, 368, 449 A.2d 1015 (1982), quoted in *Parks* v. *Bourbeau,* 193 Conn. 270, 275, 477 A.2d 636 (1984).

Connecticut courts, in interpreting the Uniform Criminal Extradition Act, must do so subject to the provisions of "any and all acts of Congress enacted in pursuance [of the extradition clause in the United States constitution] . . . ." General Statutes § 54-158.[4] The federal statute on interstate extradition is 18 U.S.C.

---

[4] General Statutes § 54-158 provides: "Subject to the provisions of this chapter, the provisions of the constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this state."

That the uniform act must be interpreted subject to such acts of Congress was recognized by both the plaintiff and the defendants in their briefs. Reargument because a statute was overlooked by the parties is, on occasion, permitted. See, e.g., *Adley Express Co.* v. *Darien,* 125 Conn. 501, 504, 7 A.2d 446 (1939). Similarly, in a case where an applicable statute was neither applied by the trial court nor noticed by the parties, a new trial may be ordered. *Stoni* v. *Wasicki,* 179 Conn. 372, 377, 426 A.2d 774 (1979). In this case, since both parties have specifically cited General Statutes § 54-159, we see no justification for ordering, sua sponte, reargument on the basis that a pertinent federal enactment was overlooked. Nor do we believe that the case should be remanded for that reason. "To return the case to the trial court simply to give the opportunity for pleading and invoking the federal statute would necessarily bring about the same result as would come from our determination of the matter now; it would be a useless procedure, for the final result would not be changed." *Campbell* v. *Rockefeller,* 134 Conn. 585, 589, 59 A.2d 524 (1948).

§ 3182.[5] The language of General Statutes § 54-159 differs significantly from that of the federal statute.

General Statutes § 54-159 requires that a demand for extradition be accompanied by "a copy of an affidavit made before a magistrate [in the demanding state], together with a copy of any warrant which was issued thereupon . . . ." The federal statute requires that the demand be accompanied by "an affidavit made before a magistrate of any State or Territory . . . ." The latter does not require a copy of any warrant which may have been issued upon the affidavit. Accordingly, under federal law, extradition may be accomplished solely on the basis of an affidavit.

The courts which have considered whether the more stringent requirement of the Uniform Criminal Extradition Act is inconsistent with the federal statute and, if so, which is paramount, have concluded that the federal statute controls. *Application of Williams,* 76 Idaho 173, 176, 279 P.2d 882 (1955); *State ex rel. Sieloff* v. *Golz,* 80 Wis. 2d 225, 240, 258 N.W.2d 700 (1977). Although the federal statute prescribes the terms for extradition by states; *DeGenna* v. *Grasso,* 413 F. Supp. 427, 430 (D. Conn. 1976); *People ex rel. Dimas* v. *Shimp,* 83 Ill. App. 3d 150, 152, 405 N.E.2d 750 (1980); the states may establish ancillary provisions as long as they

---

[5] 18 U.S.C. § 3182 provides: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

are consistent with the command of the statute. *Giardino* v. *Bourbeau,* 193 Conn. 116, 121 n.7, 475 A.2d 298 (1984). Our application and interpretation of General Statutes § 54-159 must therefore harmonize with 18 U.S.C. § 3182.

In construing General Statutes § 54-159 in light of any and all acts of Congress in pursuance of the extradition clause, it is clear that a copy of the affidavit is indispensable. It is not clear, however, that the statute requires a copy of a warrant at all. The words "a copy of any warrant which was issued [thereupon]" have been construed to mean that a copy of an arrest warrant need only be included *if* a warrant was issued based on the affidavit. See *People* v. *Hoy,* 225 N.Y.S. 2d 412, 415–16, (N.Y. Sup. Ct. 1962). 18 U.S.C. § 3182 does not require that the magistrate before whom the affidavit is sworn issue an arrest warrant, and the courts which have considered whether such a warrant must be issued have found no such requirement by implication. *Kirkland* v. *Preston,* 385 F.2d 670, 675 (D.C. Cir. 1967).

The uniform act was designed to conform to and supplement the federal statute. *DeGenna* v. *Grasso,* supra; *Glavin* v. *Warden,* 163 Conn. 394, 395 n.1, 311 A.2d 86 (1972). Under the federal statute, the plaintiff's rendition could be based on the affidavit alone. In the present case, the five warrants which accompanied the affidavit were issued upon information supplied by oral testimony under oath by the complainant, Detective J. M. Stephenson of the Dunn, North Carolina, police department. Each of the warrants states that the magistrate found probable cause to believe that the plaintiff committed the particular offense and that the warrant was "issued upon information furnished *under oath* by the complainant or complainants listed." (Emphasis added.) The latter statement appears imme-

diately above the issuing magistrate's signature. Stephenson, the complainant named on the warrants, prepared and signed the affidavit of February 7, 1983.

Since individual circumstances surrounding extradition demands are varied and diverse, the mechanical application of fixed and absolute rules is inappropriate if justice is to be achieved in a particular case. See *South Dakota* v. *Brown,* 20 Cal. 3d 765, 779, 576 P.2d 473, 144 Cal. Rptr. 758 (1978). Although our inquiry in this matter is restrained; *Parks* v. *Bourbeau,* supra; it must not be perfunctory.

The requirement in General Statutes § 54-159 that the affidavit be the document upon which the warrants were issued must, in logic, refer to the substantive allegations contained therein. In interpreting statutory language, we assume that a reasonable and rational result was intended. *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 4, 363 A.2d 1386 (1975). Under the traditional presumption of regularity with which proceedings of the demanding state are clothed; *Michigan* v. *Doran,* supra, 290; we presume that Stephenson's affidavit reduced to writing the information which he had earlier furnished under oath to the issuing magistrate. Public officials acting officially, are considered to have properly and accurately performed their duty until the contrary appears. *Parham* v. *Warden,* 172 Conn. 126, 134, 374 A.2d 137 (1976).

An issue analogous to that now before us was considered in *In re Armstrong,* 49 N.C. App. 175, 270 S.E. 2d 619 (1980), in connection with the provision of the Uniform Criminal Extradition Act which allows a demand for extradition to be accompanied "by information supported by affidavit in the state having jurisdiction of the crime." The sole question in that case was "whether the words 'information supported by affidavit' . . . require that the 'supporting' affidavits be

dated prior to or contemporaneous with the information." Id., 178. Noting that an information supported by affidavit is required to assure that the prisoner is indeed charged with a crime in the demanding state, the court found that the documents before it, which included an information and two affidavits which post-dated the information, gave adequate and overwhelming assurance that the prisoner was substantially charged in the demanding state. The court held that the purpose of the statute had been met and that "to allow applicant to prevail based on a meaningless and inflexible construction of the statute would violate that clear purpose." Id.

We have examined the warrants and accompanying affidavit in this case and are likewise satisfied that the plaintiff was substantially charged with a crime in the demanding state. Where it appears that the requesting papers were deemed to be sufficient by the executive authority of the respective states for requisition and rendition, it is not our role to interfere on habeas corpus, and discharge the accused upon technical grounds unless what was done was clearly in contravention of law. *Hill* v. *Blake,* 186 Conn. 404, 409, 441 A.2d 841 (1982). " 'It is ancient [and yet enduring] wisdom that statutes should be interpreted so as to effectuate their manifested purpose of object.' 2A Sutherland, Statutory Construction (4th Ed. Sands) § 58.06, p. 474." *McGaffin* v. *Roberts,* 193 Conn. 393, 407, 479 A.2d 176 (1984). The purpose of General Statutes § 54-159 is to implement the extradition clause of the United States constitution by providing a procedure for the summary disposition of extradition cases. *Narel* v. *Liburdi,* supra, 565. We hold that, on the facts of this case, the requisitioning documents, including the warrants, which were issued on the basis of sworn oral testimony later embodied in a subsequent affidavit, met the statutory requirements of General Statutes

§ 54-159. To hold otherwise would ignore the intent of the Uniform Criminal Extradition Act and lead to a result inconsistent with 18 U.S.C. § 3182.

There is no error.

In this opinion DUPONT, C.P.J., concurred.

HULL, J., dissenting. As briefed and argued before this court, the only issue was "whether the extradition documents on their face are in order." The pertinent section of General Statutes § 54-159 requires, for recognition of extradition demand, "a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued *thereupon* . . . ." (Emphasis added.) No great semantical exegesis is required to demonstrate that a warrant together with an affidavit made some four months later, was not issued "thereupon."

Webster, Third New International Dictionary defines "Thereupon," in definition two, as "on account of or in consequence of that . . . ." Beyond cavil, warrants issued on September 1, 1982, September 21, 1982, and October 15, 1982 were not issued in consequence of an affidavit dated February 7, 1983.

Rather than deciding the narrow issue raised in this case, the majority concludes, on the basis of the federal extradition statute, 18 U.S.C. § 3182, that Connecticut's more exacting terms concerning the necessary extradition documents are not controlling. In my view, under the circumstances of this case, this court should not decide the case on a constitutional basis not claimed by the state and which the defendant, therefore, has never had the chance to meet.

The recent case of *State* v. *Martin*, 2 Conn. App. 605, 482 A.2d 70 (1984), is entirely apposite. "The rule that claims on appeal should first be made at trial ' "applies

to criminal as well as civil cases." ' *State* v. *Johnson,* 166 Conn. 439, 445, 352 A.2d 294 (1974). That rule applies to the state as well as to the defendant. We therefore decide this case on the theory on which it was tried and decided in the trial court, and briefed and argued in this court. *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 120, 132, 464 A.2d 6 (1983)." Id., 612B.

Fundamental fairness in the context of a habeas corpus action concerning extradition at least requires reargument on the issue of the controlling effect of the federal statute on interstate extradition, 18 U.S.C. § 3182.

For the foregoing reasons, I dissent.